STATE OF CONNECTICUT *v.* WILLIAM VALEDON
(SC 16533)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued March 15—officially released August 13, 2002

*Joy K. Fausey*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Laura DeLeo*, assistant state's attorney, for the appellant (state).

*Jerald S. Barber*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The sole issue in this certified appeal is whether the Appellate Court improperly concluded that the defendant, William Valedon, was denied his right of allocution in a probation revocation hearing because the trial court did not address him personally during the dispositional phase of that proceeding to inquire whether he wished to speak before being sen-

tenced. *State* v. *Valedon*, 62 Conn. App. 824, 828, 774 A.2d 1006 (2001). The state claims, inter alia, that the Appellate Court impermissibly expanded the rule governing a defendant's right of allocution articulated in Practice Book § 43-10 (3).[1] We conclude that there is no affirmative duty on the part of the trial court to inquire of a defendant during the dispositional phase of a probation revocation hearing whether he wishes to address the court personally. Accordingly, we reverse the judgment of the Appellate Court.

The following facts and procedural history guide our resolution of this appeal. On April 22, 1998, the defendant pleaded guilty to risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (1)[2] and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1).[3] The defendant was given a total

[1] Practice Book § 43-10 provides in relevant part: "Before imposing a sentence or making any other disposition after the acceptance of a plea of guilty or nolo contendere or upon a verdict or finding of guilty, the judicial authority shall, upon the date previously determined for sentencing, conduct a sentencing hearing as follows . . .

"(3) The judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence. . . ."

[2] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[3] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age, or (B) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual contact, or (C) physically helpless, or (D) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (E) in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person . . . ."

effective sentence of five years of incarceration, execution suspended after sixty days, and three years of probation. The conditions of the defendant's probation included, among other things, that: he not have any direct or indirect contact with children under the age of sixteen; he not possess children's clothes, toys, games, or other items; and he not loiter near school yards, parks, playgrounds, swimming pools, arcades or other places primarily used by children under the age of sixteen.

Approximately thirteen months after sentencing, the defendant's probation officer secured an arrest warrant for the defendant based on his alleged violation of certain conditions of his probation, including being present in a park, possessing numerous articles of children's toys, games and clothing in his home, and being at his home while children were present. After a three day hearing, the trial court found that the defendant had violated his probation.

Counsel for the defendant then made a lengthy statement to the court in which he challenged the sufficiency of the state's evidence and pleaded for leniency on the defendant's behalf. The defendant did not ask to address the court, and his counsel did not ask that the defendant be allowed to speak. The trial court rendered judgment revoking the defendant's probation and sentenced the defendant to serve the remaining fifty-four months of his sentence. The defendant appealed from the trial court's judgment to the Appellate Court.

The Appellate Court first affirmed the trial court's finding that the defendant had violated the terms and conditions of his probation. Id., 827. The Appellate Court then invoked its supervisory authority to review the claim that the defendant had been denied his right of allocution; id.; and concluded that Practice Book § 43-10 (3) required the trial court to address the defen-

dant personally in the dispositional phase[4] of the probation revocation hearing to determine whether he wished to speak before the court imposed sentence. Id., 828.[5] The Appellate Court, therefore, reversed the judgment as to the disposition and remanded the case for a new dispositional hearing. Id. We granted the state's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the defendant was denied his right of allocution prior to his sentencing on this violation of probation?" *State* v. *Valedon*, 256 Conn. 921, 774 A.2d 141 (2001). This appeal followed.

The state claims that the Appellate Court improperly interpreted § 43-10 (3) because that rule of practice does not direct the trial court to inquire of the defendant whether he wishes to address the court personally during the dispositional phase of a probation revocation hearing. The defendant responds that the trial court's failure to address him personally was an express violation of § 43-10 (3), and that the trial court's action was inconsistent with our decision in *State* v. *Strickland*, 243 Conn. 339, 703 A.2d 109 (1997). We agree with the state.

The issue of whether § 43-10 (3) directs the trial court to inquire of the defendant whether he wishes to address the court personally before sentencing requires us to interpret this Practice Book provision. Our rules of statutory construction apply also to the rules of practice and our review of an issue of construction is plenary.

---

[4] A probation revocation proceeding consists of two distinct stages. The first phase is an adversarial evidentiary hearing to determine whether the defendant has violated a condition of probation. During the second phase, the court makes its disposition as authorized by General Statutes § 53a-32. *State* v. *Strickland*, 243 Conn. 339, 348, 703 A.2d 109 (1997).

[5] In reaching its conclusion, the Appellate Court relied on its decision in *State* v. *Hedman*, 62 Conn. App. 403, 410, 772 A.2d 602 (2001). See footnote 6 of this opinion and the accompanying text.

*Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 438–39, 797 A.2d 1081 (2002).

The Appellate Court reviewed the defendant's alleged denial of his right of allocution pursuant to its supervisory authority because the claim was not preserved at the trial level. *State* v. *Valedon*, supra, 62 Conn. App. 827. Accordingly, we consider whether the Appellate Court properly employed its judicial supervisory authority in reversing the trial court's judgment.

"Appellate courts possess an inherent supervisory authority over the administration of justice." (Internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 332, 715 A.2d 1 (1998). Supervisory powers are exercised "to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 528, 668 A.2d 1288 (1995). "Under our supervisory authority, we have adopted rules intended to guide the lower courts in the administration of justice in all aspects of the criminal process." *State* v. *Santiago*, supra, 333.

In *State* v. *Strickland*, supra, 243 Conn. 354, we first established that a defendant has a right of allocution in a probation revocation hearing. See also *State* v. *Berube*, 256 Conn. 742, 761, 775 A.2d 966 (2001); *State* v. *Mourning*, 249 Conn. 242, 251–52, 733 A.2d 181 (1999). The trial court in *Strickland* found during the evidentiary phase of the hearing that the defendant had violated his probation. *State* v. *Strickland*, supra, 341–42. The court then sentenced the defendant to serve the remainder of his sentence. During the sentencing, the defendant twice asked the court to allow him to be heard, but the court denied him any opportunity to speak. Id., 342–43.

We noted the similar substantial discretion enjoyed by both the original sentencing court and the court deciding on a disposition after finding a violation of probation. Id., 350–51. For reasons culled from the common-law history of the right of allocution, "and in light of the fundamental purposes served by allocution, namely, maintaining fair standards of procedure, individualized and equitable sentencing, and the perception of fairness in the judicial system overall," we concluded that a defendant could not be denied his right of allocution in the dispositional phase of a probation revocation proceeding. Id., 354. In *Strickland*, however, the defendant had specifically requested and been denied his right to allocution. Id., 342–43. We therefore did not decide in *Strickland* whether § 43-10 (3) required the trial court to address the defendant *personally* during the dispositional phase of a probation revocation hearing in order to inquire whether he wished to exercise his right of allocution, when neither the defendant nor his counsel had made such a request.

In resolving this issue, we begin with the language of Practice Book § 43-10 (3), which provides that "[t]he judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence." We note that the plain language of § 43-10 (3) does not direct the trial court to address the defendant personally to inquire whether the defendant wishes to speak during the dispositional phase of the probation revocation hearing. The absence of such language requiring the court to address the defendant personally is significant, in light of the fact that specific directions to address the defendant personally have been included in other rules of practice. See *Connor v. Statewide Grievance Committee*, supra, 260 Conn. 440–41. For example, Practice Book § 39-19 requires that, when accepting a plea of guilty or nolo contendere,

"[t]he judicial authority shall not accept the plea without first addressing the defendant *personally* and determining that he or she fully understands . . . ." (Emphasis added.) Practice Book § 39-20 requires that the judicial authority determine the voluntary nature of a plea "by addressing the defendant *personally* in open court . . . ." (Emphasis added.) Thus, generally, if a rule of practice is intended to require the trial court to address the defendant *personally*, the rule explicitly directs the trial court to do so.

In its analysis of the issue before us, the Appellate Court relied on *State* v. *Hedman*, 62 Conn. App. 403, 410, 772 A.2d 603 (2001), wherein the court concluded that the defendant had been denied his right of allocution because, after he had been found to have violated his probation, the trial court did not inquire whether he wished to speak before being sentenced.[6] In *Hedman*, the Appellate Court relied largely upon the United States Supreme Court's decisions in *Green* v. *United States*, 365 U.S. 301, 304–305, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961), and *Hill* v. *United States*, 368 U.S. 424, 426, 81 S. Ct. 468, 7 L. Ed. 2d 417 (1962), in which the United States Supreme Court had construed rule 32 (a) of the Federal Rules of Criminal Procedure as requiring the trial judge to invite the defendant personally to speak prior to sentencing. *State* v. *Hedman*, supra, 410–12. The Appellate Court found those two cases persuasive because "[i]n 1961 and 1962, the relevant dates of both the *Green* and *Hill* decisions, rule 32 (a) was nearly identical to Practice Book § 43-10 (3)." Id., 410–11. At that time, rule 32 (a) did not require the trial court explicitly to inquire whether the defendant wished to be heard before sentencing. Id.

---

[6] We also granted certification to appeal in *State* v. *Hedman*, 256 Conn. 909, 772 A.2d 603 (2001), and that case, a companion to the present case, also has been decided by us today. See *State* v. *Hedman*, 261 Conn. 390, 802 A.2d 842 (2002).

We disagree with the Appellate Court's reliance on *Green* and *Hill* because, at the time that what is now Practice Book § 43-10 (3) was adopted in 1976, rule 32 (a) of the Federal Rules of Criminal Procedure had been amended to add the specific requirement that the court *inquire* of a defendant whether he wished to make a statement before sentencing.[7] The appropriate referent in 1976, therefore, was to amended rule 32 (a). Practice Book § 43-10 (3) was drafted in apparent rejection of the then explicit requirement in rule 32 (a) that the court inquire personally of a defendant whether he wished to speak before sentencing.

The history of the adoption of the rule of practice that is now § 43-10 (3) reveals that it was based on rule 613 (2) of the Uniform Rules of Criminal Procedure. See L. Orland & D. Borden, 4 Connecticut Practice Series: Criminal Procedure (3d Ed. 1999) § 43-10, historical note, p. 555. At the time of the adoption of the Practice Book provision, rule 613 (2) [now rule 614], provided in relevant part: "Except as provided in rule 713 [governing voluntary or otherwise justifiable absence from a proceeding], the court shall address the defendant personally to ascertain whether he wishes to make a statement in his own behalf and to present any information in mitigation of punishment or reason, why he should not be sentenced and, if he does, afford him a reasonable opportunity to do so." See L. Orland & D. Borden, supra, p. 555. Despite the requirement in rule 613 (2)

---

[7] In 1976, rule 32 (a) (1) of the Federal Rules of Criminal Procedure provided in relevant part: "Before imposing sentence the court shall . . . address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment. . . ." The text of rule 32 subsequently has been amended several times and the relevant language currently is codified as rule 32 (c) (3), which provides in relevant part: "Before imposing sentence, the court must . . . (C) address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence . . . ."

that the court personally inquire of a defendant whether he wished to speak before sentencing, Practice Book § 43-10 (3) contains no such requirement.

Language directing the trial court to "address the defendant personally" could easily have been included in the original text of § 43-10 (3) had that been the intention of the judges of the Superior Court in adopting the rule. Instead, in clear distinction to both the Federal Rules of Criminal Procedure and the Uniform Rules of Criminal Procedure, § 43-10 (3) includes no requirement that the court make personal inquiry of the defendant whether he wishes to speak before sentencing. Although it is the better practice for the trial court to inquire of each defendant whether he or she wishes to make a personal statement before being sentenced for violation of probation, and we encourage the trial court to make such an inquiry, we conclude that the plain language of § 43-10 (3) does not require that such an inquiry be made and that this is not a case calling for the exercise of our supervisory authority over the administration of justice to so order. Accordingly, we further conclude that the trial court, in passing sentence without addressing the defendant personally, did not deny the defendant his right of allocution at his probation revocation hearing.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.